906 So.2d 540 (2005)
Priscilla ADAMS
v.
BURGER KING.
No. 2004 CA 0146.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
*541 Cassandra Krebs, Covington, Counsel for Plaintiff/Appellant Priscilla Adams.
Debra Talbot Parker, Baton Rouge, Counsel for Defendants/Appellees Sydran Services, L.L.C. a/k/a Burger King and Louisiana Workers' Compensation Corp.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
Claimant-appellant, Priscilla Adams, appeals a judgment of the Office of Workers' Compensation (OWC) concluding that she is not entitled to indemnity benefits or penalties and attorney fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Claimant worked as an assistant manager at the Burger King located in Covington, Louisiana. On the afternoon of August 3, 2001, after placing a pan of onions into a walk-in cooler, she slipped and fell as she exited. As a result, she sustained injuries to her right shoulder and elbow. Claimant received medical care at Riverside Medical Center in Franklinton, Louisiana the following afternoon. Her arm was placed in a sling, and she was given pain medication and muscle relaxers. Claimant, who was diagnosed with right shoulder strain and right elbow strain, was released to return to work with a physical restriction of no heavy lifting.
Due to continuing pain, claimant sought medical attention at the emergency rooms *542 of various medical facilities where she was treated with anti-inflammatory medications. Eventually, claimant chose Dr. Paul Doty as her treating physician. On September 24, 2001, Dr. Doty released claimant to full employment. But three days subsequent to her accident, claimant was fired from her job at Burger King for reasons not related to her injury.
In the latter part of 2001, claimant secured employment at the Waffle House in Covington, Louisiana. She worked there for less than a week before she quit because, due to her elbow injury, she felt unable to perform the duties expected of her. Claimant, who had consistently sought medical treatment from Dr. Doty from the date of her injury, returned to his care in December 2001, when she was again released to return to work with no functional physical restrictions.
On March 11, 2002, claimant was unloading groceries when she developed increasing distress into her right shoulder extending along her right upper extremity and her wrist. Dr. Doty again treated her and, on May 13, 2002, released her to return to employment, restricting her to light duty with a lifting limitation of five pounds.
On May 10, 2002, Sydran Services, LLC (a/k/a Burger King) through its workers' compensation insurer, Louisiana Workers' Compensation Corporation (LWCC), initiated indemnity payments for temporary total disability.[1] LWCC continued payment of temporary total disability indemnity benefits to claimant.[2]
On June 25, 2002, in order to sign up for governmental assistance, claimant requested of Dr. Doty's office written evidence that she was not working and that she was disabled. A disability certificate stating that claimant was totally incapacitated from October 1, 2001, through May 14, 2002, was provided to her by personnel in Dr. Doty's office. Dr. Doty's signature was affixed by stamp to the disability certificate.
On July 18, 2002, claimant formally initiated this lawsuit, naming Sydran Services, LLC (a/k/a Burger King) and LWCC as defendants. Simultaneously, LWCC issued weekly payments of temporary total disability indemnity benefits.
On September 25, 2002, Dr. Doty advised LWCC that claimant's elbow was no longer swollen, noted her full range of motion of the right elbow and the right shoulder, and indicated that she could return to work doing her regular duties. Subsequent to tender of the indemnity benefit for temporary total disability for the week of September 27, 2002, through October 3, 2002, LWCC issued a notice to claimant on October 8, 2002, stating its intent to discontinue payments.
In October of 2002, claimant secured employment at McDonald's in Amite, Louisiana, earning $5.00 an hour. She subsequently received a promotion to swing manager where she earned $8.10 an hour.
A trial on the merits was held on August 14, 2003. At the close of defendants' case, OWC ruled in favor of Sydran Services, LLC (a/k/a Burger King) and LWCC, denying all relief sought by claimant.[3] Claimant appeals.

*543 DISCUSSION
Although at trial, claimant demanded both temporary total disability payments and supplemental earnings benefits (SEB), she limits her appeal to OWC's denial of her entitlement to SEB.
Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEB if she sustains a work-related injury that results in her inability to earn ninety percent or more of her average pre-injury wage. Initially, the claimant bears the burden of proving, by a preponderance of the evidence, the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Cannedy v. Yarborough, XXXX-XXXX, p. 3 (La.App. 1st Cir.6/27/03), 858 So.2d 504, 506.
Although claimant maintains that in the work she secured at McDonald's in October 2002, she is physically limited due to the Burger King injury on August 3, 2001, she offered no medical evidence to corroborate this. And a claimant's testimony of inability to perform duties based on subjective complaints, without more, is insufficient to prove entitlement to SEB. See Cannedy v. Yarborough, XXXX-XXXX at p. 4, 858 So.2d at 507. Instead, the medical evidence established that on September 25, 2002, Dr. Doty concluded that claimant's elbow was no longer swollen and that she could return to work doing her regular duties. Accordingly, OWC correctly determined that claimant failed her burden of proving entitlement to SEB from that date forward.
Without identifying specific subsections of La. R.S. 23:1201 applicable to her demands, claimant asserts entitlement to penalties and attorney fees for LWCC's *544 alleged failures to provide her with vocational rehabilitation services and to investigate the facts underlying her entitlement to SEB. Insofar as the claim for vocational rehabilitation, the record fails to establish the date a demand for such services was made on LWCC. In her testimony, without identifying a specific date or time frame, claimant stated that she was aware that her former attorney had requested vocational rehabilitation services. She testified that no one from LWCC ever provided her with them. Claimant alluded that the request was made some time after she had voluntarily left her employment at the Waffle House in December 2001. Dr. Doty's medical records indicate that on December 17, 2001, he discharged claimant from his care and that on January 8, 2002, he stated she had no functional restrictions. And while LWCC claims adjuster, Dana Munson, conceded that a demand for vocational rehabilitative services was made on her, she said that request was not approved because claimant had received a release to return back to her job doing her normal duties. Workers' compensation statutes providing for penalties and attorney fees are penal in nature and to be strictly construed. Langley v. Petro Star Corp. of La., XXXX-XXXX, pp. 3-4 (La.6/29/01), 792 So.2d 721, 723. Accordingly, we find no abuse of discretion in the denial of penalties or attorney fees for the failure of LWCC to provide claimant with vocational rehabilitation services. Moreover, based on our review of the record and mindful that claimant failed to demonstrate entitlement to SEB as a result of her August 3, 2001 injury, we find no abuse of discretion by OWC in denying claimant's demand for penalties and attorney fees for the alleged failure of LWCC to reasonably investigate her entitlement to SEB.

DECREE
OWC's judgment is affirmed. All appeal costs are assessed against claimant-appellant, Priscilla Adams.
AFFIRMED.
PARRO and WELCH, JJ., concur.
NOTES
[1] A lump sum of $2,266.01, representing 52 days of claimant's disability from August 4, 2001, through September 24, 2001, was tendered to claimant.
[2] LWCC tendered $958.70 on June 19, 2002, for claimant's disability from May 30, 2002, through June 20, 2002.
[3] OWC originally rendered a judgment that addressed the primary issues raised by the parties and concluded claimant had failed to bear her burden of proof on the issues of entitlement to indemnity benefits "from September 24, 2001 through the present." But the judgment, which was not dated, did not include any decretal language, failing to render judgment in favor of or against anyone or to specify the relief granted. Concluding that the judgment was fatally defective, see La. C.C.P. arts. 1841 and 1918; Carter v. Williamson Eye Center, 2001-2016, pp. 2-3 (La.App. 1st Cir.11/27/02), 837 So.2d 43, 44; Rogers v. Custom Built Garage, XXXX-XXXX (La.App. 1st Cir.3/28/02), 814 So.2d 693, 696; Scott v. State, 525 So.2d 689, 690-91 (La.App. 1st Cir.1988), writ denied, 558 So.2d 1128 (La.1990), this court issued an order to the parties, directing that they present a reformed judgment to OWC containing appropriate language that specifically (a) identified the party in whose favor the judgment is rendered, (b) identified the party against whom the judgment is rendered, and (c) identified the relief granted or denied. The order further required that prior to submission of the judgment to OWC, counsel for the parties sign a statement approving the judgment as to form or attaching a signed statement to the judgment stating why the form of the judgment is not approved. OWC was ordered to sign a reformed judgment within ten days of our order. OWC subsequently rendered a judgment, and it is the reformed judgment that we review in this appeal. The reformed judgment, issued fifteen days subsequent to our order, does not contain statements by any party approving the judgment as to form or stating why the form of the judgment was not approved. Additionally, the OWC judgment "concludes the law and evidence to favor [defendants] and [is] against [claimant]" and that claimant "failed to carry her burden to prove she was entitled to indemnity benefits." The reformed judgment subsequently denies claimant's demand for penalties and attorney fees as well as "all other relief sought by either party," the latter of which, we find, necessarily encompasses claimant's demand for indemnity benefits thereby supporting our jurisdiction to review this matter. But because a judgment should not depend upon discretion or fanciful beliefs of one in whose favor the judgment runs or the law officer charged with execution thereof, see Emery v. Succession of Martel, 10 So.2d 267, 269 (La.App.Orleans 1942), where, as here, the trial focused primarily on claimant's entitlement to indemnity benefits, better practice would be for the judgment to particularly dismiss (or deny) claimant's demand for those benefits.