WEIMER, J.,
concurring.
| /‘[jurisprudence, even when it arises to the level of jurisprudence constante, is a secondary source of law.” Delta Chemical Corp. v. Lynch, 07-0431, p. 13 (La. App. 4 Cir. 2/27/08), 979 So.2d 579, 588 (citing Alvin B. Rubin, Hazards of a- Civilian Venturer in Federal Court: Travel and Travail on the Erie Railroad, 48 La. L. Rev. 1369, 1372 (1988)).
Here, the primary source of law which guides our decision is statutory. This case turns on whether the Louisiana Medical Malpractice Act (LMMA) addresses what has been described as “credentialing” of a physician to work in a hospital emergency room. More specifically, the focus is whether La. R.S. 40:1299.4'1(A)(8)[1] includes credentialing or its equivalent within the LMMA’s definition of malpractice. i>: •
After observing that credentialing is not explicitly mentioned in La. R.S. 40:1299.41(A)(8), the majority proceeds directly to the six-factor test from Coleman v. Deno, 01-1517, pp. 17-18 (La. 1/25/02), 813 So.2d 303, 315-16. Those six factors may be used “to assist a court in détermin- *530 ing whether certain conduct by a qualified |2health care provider constitutes ‘malpractice’ as defined under the [L] MMA.” Williamson v. Hospital Service Dist. No. 1 of Jefferson, 04-0451, p. 6 (La. 12/1/04), 888 So.2d 782, 786. However, because of the primary role of statutory law, any applicable traditional methods of statutory interpretation should be exhausted before resorting to assistance from the jurisprudential test in Coleman.
Here, I find the rule of statutory construction expressio unius est exclusio al-terius applicable. The rule has been recognized as an “established legal maxim,” and dictates “that when a law specifically enumerates certain items but omits other items, the omission is deemed intentional.” Anderson v. Ochsner Health System, 13-2970, p. 6 (La. 7/1/14), 172 So.3d 579, 583.
The legislature’s definition of “malpractice” in the LMMA lists various acts and omissions. The list is lengthy and contains over a dozen concepts:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(8).[2]
The majority accurately notes that the nearest definition within La. R.S. 40:1299.41(A)(8) to credentialing is “training and supervision of health .care providers.” Under a plain language interpretation called for in La. R.S. 1:4,[3] credentialing is distinct from “training and supervision.” Credentialing involves Isgranting a physician privileges, in this case to practice in the hospital’s emergency room. The thrust of plaintiffs’ credentialing claim is that the hospital never should have granted Dr. Zavala those privileges in the first place. In contrast, the thrust of a “training and supervision” claim (also made in plaintiffs’ petition, but not directly at issue here) is that after the hospital granted privileges, it failed to meet its later and ongoing responsibility to ensure that Dr. Zavala was given appropriate direction to perform her role as an emergency room physician. Finding that plaintiffs’ credentialing claim focuses on different times and on different duties than a “training and supervision” claim, I find that the legislature’s omission of credentialing in its detailed list of definitions to be an important indicator of the legislature’s intent not to subject a credentialing claim to the constraints of the LMMA.[4]
*531 The definitional list in La. R.S. 40:1299.41(A)(8) is preceded by the direction that “any unintentional tort or any breach of contract based on health care or professional services rendered ... by a health care provider, to a patient” is governed by the LMMA. The plain language just quoted excludes credentialing from its scope, because credentialing involves a hospital administrative act, rather than the exercise of patient care.
To reiterate, both the plain statutory language and the omission of credentialing are important indicators of legislative intent for the specific question presented here. However, because of this court’s earlier observation that the LMMA is intended to [4“apply strictly to claims ‘arising from medical malpractice,’ ” it is therefore appropriate to delve further by applying the six-factor test from Coleman “to assist” this court’s inquiry. See Williamson, 04-0451 at 5, 888 So.2d at 786 (quoting La. R.S. 40:1299.41(I)).[5]
I fully agree with the application of the Coleman test. As the majority concludes, plaintiffs’ credentialing claim is not governed by the LMMA. However, I believe the Coleman test is secondary to traditional methods of statutory interpretation. I find that traditional methods, such as reviewing the plain language of La. R.S. 40:1299.41(A)(8) and applying the expres-sio unius maxim, strongly point to allowing plaintiffs’ claim to be litigated-untethered from the strictures of the LMMA. Without implying that it is always necessary to seek assistance from the Coleman factors, the novelty of this issue and the repeated presentation of the pivotal definition of malpractice to the legislature for amendment, weigh in favor of applying those factors to aid in determining legislative intent. Even after utilizing traditional methods of statutory interpretation and applying the Coleman factors, I find that this case presents a close call. Therefore, it would not surprise me to see the legislature revisit the issue of credentialing. In my view, the Coleman factors have been correctly applied in the majority opinion, and those factors support the conclusion reached under traditional principles of statutory interpretation, i.e., the statutory definition of medical malpractice does not include physician credentialing.
For these reasons, I respectfully concur.

. La. R.S, 40:1299,41(A)(8) was redesignated as La. R.S. 40:1231.1(A)(13) by La. H.R. Con. Res. 84, § 7(F)(ii) (2015),

. See note 1, supra.

. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4.

. The district court decided not to apply the expressio unius maxim, observing that proposed legislation would have explicitly mentioned credentialing in La. R.S. 40:1299.41(A)(8), but the legislature never adopted those proposals. In the district court’s view, because La. R.S. 24:177(D) provides that "[a] bill introduced but which does not become law is not competent evidence of legislative intent,” the court was prohibited from applying the expressio unius maxim. However, and without expressing any view on the efficacy of La. R.S. 24:177(D), I find no *531 bar to applying the expressio unius maxim to the list of acts and omissions the legislature has actually enacted in the LMMA. Stated differently, La. R.S. 24:177(D) purports to prohibit inferring legislative intent from legislation that has not been enacted; the statute does not purport to prohibit inferring legislative intent from enacted legislation.

. La. R.S. 40:1299.41(1) was redesignated as La. R.S. 40:1231.1(1) by La. H.R. Con. Res. 84, § 7(F)(ii) (2015).