830 So.2d 1037 (2002)
George LEE, III,
v.
Richard PENNINGTON, New Orleans Police Chief, in his Official and Individual capacity, Mayor Marc Morial, in his Official and Individual Capacity, ABC Insurance Co. and EFJ Insurance Co. Insuring Mayor Morial and Richard Pennington, et al.
No. 2002-CA-0381.
Court of Appeal of Louisiana, Fourth Circuit.
October 16, 2002.
*1039 Kenneth M. Plaisance, New Orleans, LA, Counsel for Plaintiff/Appellant.
Mary Ellen Roy, Sheryl A. Odems, Phelps Dunbar LLP, New Orleans, LA, Counsel for Defendant/Appellee, WWL-TV, Inc., Emmis Television Broadcasting, L.P., Tribune Television New Orleans, Inc. and New Orleans Hearst-Argyle Television, Inc.
James R. Swanson, Loretta G. Mince, Correro Fishman Haygood Phelps Walmsley & Casteix, New Orleans, LA, Counsel for Defendant/Appellee, The Times-Picayune Publishing Corporation.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
LOVE, Judge.
George Lee (hereinafter "Plaintiff) appeals the judgment of the trial court denying his motion to consolidate, granting Defendant's motion to strike under La. C.C.P. art. 971 (hereinafter "Article 971"), and denying his motion to declare Article 971 unconstitutional. The Times-Picayune, WWL-TV, Inc., Emmis Television *1040 Broadcasting, L.P., Tribune Television, Inc., and New Orleans Hearst-Argyle Television, Inc. (hereinafter "Defendants" collectively) appeal the trial court's denial of attorney fees and costs under Article 971. For the following reasons, we affirm the trial court's denial of the motion to consolidate, denial of the motion to declare Article 971 unconstitutional, and grant of the motion to strike. We reverse the denial of attorney fees and costs, and remand to the trial court for determination in accordance with the findings of this Court.

FACTS AND PROCEDURAL HISTORY
On August 24, 1999, plaintiff George Lee, III, was arrested on two counts of aggravated rape and one count of forcible rape.[1] The New Orleans Police Department issued a news release detailing the arrest. Four New Orleans television stations aired segments regarding the Plaintiff's arrest that same evening, and the Times-Picayune published an article regarding the arrest the next day.
On February 23, 2000, Plaintiff filed a petition against Mayor Marc Morial, the City of New Orleans, Police Superintendent Richard Pennington, District Attorney Harry Connick, and their insurers claiming damages for defamation, violations of right to privacy, and contributing to and conspiring for malicious prosecution. The petition was amended on January 31, 2001, to add the Times-Picayune and several broadcast and news media channels for the aforementioned offenses. The petition was amended again on June 20, 2001, adding the tort of racial profiling in the media and violations of the abuse of right doctrine.[2]
Defendants filed a motion to strike under Article 971, and Plaintiff filed motions to declare Article 971 unconstitutional and to consolidate his case with those of Darryl Coulon and Donald Brooks. The trial court denied both of Plaintiff's motions. Defendants' motion to strike was granted. The trial court denied Defendants' request for attorney fees and costs. Plaintiff appeals the trial court's denial of his motions to consolidate and to declare Article 971 unconstitutional and the grant of Defendants' motion to strike. Defendants appeal the denial of attorney fees and costs.
LAW & DISCUSSION
The issues Plaintiff raises on appeal are whether: (1) Article 971 is unconstitutional; (2) the trial court erred by not consolidating his case with those of Darryl Coulon and Donald Brooks; (3) Defendants defamed him; (4) Defendants invaded his right to privacy and portrayed him in a false light; and (5) Defendants racially profiled him in the media. The only issue Defendants raise is whether the trial court erred by not awarding them reasonable *1041 attorney fees and costs pursuant to Article 971.
CONSTITUTIONALITY OF LA. C.C.P. ART. 971
Courts must construe statutes so as to preserve their constitutionality, when it is reasonable to do so. State v. Fleury, XXXX-XXXX, p. 3 (La.10/16/01), 799 So.2d 468. In general, statutes are presumed to be constitutional and the party challenging the validity of the statute has the burden of proving it is unconstitutional. Soloco, Inc. v. Dupree, 97-1256, p. 3 (La.1/21/98), 707 So.2d 12, 14. Plaintiff challenges the constitutionality of Article 971 on the grounds that it violates the basic principles of statutory construction and equal protection, denies due process, and it violates the abuse of right doctrine. The provisions of the statute at issue provide as follows:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the proceeding, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.

* * *
E. This Article shall not apply to any enforcement action brought on behalf of the state of Louisiana by the attorney general, district attorney, or city attorney acting as a public prosecutor. (Emphasis added)
The first constitutional issue for us to consider is the constitutionality of the construction of Article 971. The Louisiana Supreme Court has emphasized, "the paramount consideration for statutory interpretation is the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law." Fontentot v. Chevron U.S.A. Inc., 95-1425, p. 7 (La.7/2/96), 676 So.2d 557, 562, citing, Touchard v. Williams, 617 So.2d 885, 888 (La.1993). When Article 971 was enacted in 1999, the legislature found "there had been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." La. C.C.P. art. 971. The intent of this statute is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process. Stern v. Doe, XXXX-XXXX, p. 4 (La.App. 4 Cir. 12/27/01), 806 So.2d 98, 101.
Article 971 was enacted by the legislature as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press. Under Louisiana Civil Code article 9, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in *1042 search of the intent of the legislature." Our holding in Stern clearly particulates the standard to be applied in determining the "probability of success" as the standard and/or elements of the tort the plaintiff alleges the defendant committed, coupled with the legislative intent set forth when the statute was enacted. Therefore, we find no constitutional flaw with the construction of Article 971.
The second and most important constitutional issue before us is whether Article 971 violates the equal protection clause. Plaintiff argues that he is treated differently under this article from the State because enforcement actions brought by the State of Louisiana, attorney general, district attorney and city attorney are exempt from its application. "Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." State v. Fleury, XXXX-XXXX, p. 5 (La.10/16/01) 799 So.2d 468, 472, citing, State v. Petrovich, 396 So.2d 1318, 1322 (La.1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. Id. In Sibley v. Board of Supervisors of La. State Univ. and Agric. and Mechanical College, 477 So.2d 1094 (La.1985), the court provided guidance when analyzing a legislative classification:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
Article 971 does not classify individuals by race or religious belief, nor does it use birth, age, sex, culture, physical condition, or political ideas as a basis for classification, therefore the legislature need only demonstrate the furtherance of an appropriate state interest by this article.
Under Article 971, the two classifications created are those who may or may not employ this article depending upon whether the plaintiff is a public entity exempt under this article.[3] This article applies to the litigiousness of the public regarding First Amendment issues, and there is a legitimate governmental interest to ensure that the exercise of one's constitutional right is not chilled by an abuse of the judicial process. The Louisiana legislature's intent to prevent the abuse of the legal system by providing a procedural mechanism to dispense with meritless suits *1043 that have the purpose of chilling one's freedom of speech is a legitimate state interest. Furthermore, Article 971 does not prevent anyone from pursuing his or her rights under the First Amendment; it only prevents one from using this motion to dismiss when a state entity is the plaintiff. A litigant retains the right to bring an action against or defend himself in an action brought forth by a state entity, and we therefore find no reason to declare this article unconstitutional.
The last constitutional issue to be addressed is whether Article 971 denies due process. Article 1 Section 22 of the Louisiana Constitution provides that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." (Emphasis added) In addition, the Seventh Amendment of the United States Constitution provides "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Plaintiff contends that Article 971 denies one due process under the law by allowing the trial court to determine one's "probability of success" at a jury trial before proceeding, instead of allowing a jury (i.e., the proper body), to make this determination by issuing a verdict after a trial. However, the only purpose of Article 971 is to act as a procedural screen for meritless suits, which is a question of law for a court to determine at every stage of a legal proceeding. A plaintiff is only required to show a "probability of success" of his claim before a jury (i.e., the merits) based upon the elements of the tort claim he alleges. This article does not bar anyone with a valid claim from pursuing his case through the judicial process.
We find the constitutional challenges made are without merit, and that Article 971 is constitutional.
ABUSE OF RIGHT DOCTRINE VIOLATION UNDER LOUISIANA CONSTITUTION ART. 1 § 7
Plaintiff claims his constitutional rights under Louisiana Constitution Art. 1 § 7 were violated by Defendants under the abuse of rights doctrine. Louisiana Constitution Art. 1 § 7 provides that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."
The doctrine of abuse of rights has been invoked sparingly in Louisiana. Steier v. Heller, 31,733, p. 5 (La.App. 2 Cir. 5/5/99), 732 So.2d 787, 790, citing, Massachusetts Mut. Life Ins. Co. v. Nails, 549 So.2d 826 (La.1989). The abuse of rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights. Id. In Steier, the court stated the conditions under which the abuse of right doctrine is appropriate as follows:
The abuse of rights doctrine applies only when one of the following conditions are met:
(1) the predominant motive for exercise of the right is to cause harm;
(2) there is no serious or legitimate motive for exercise of the right;
(3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
(4) the exercise of the right is for a purpose other than that for which it was granted.
Id. at p. 5-6, 732 So.2d 790-91.
The basis of Plaintiff's argument is Defendants mischaracterized him as a *1044 "serial rapist" in the newspaper article(s) and newscast(s). Defendants published article(s) and aired newscast(s) regarding an official news release published by the New Orleans Police Department. Specifically, in the August 25, 1999 article it was stated that "... Lee had been arrested on two counts of aggravated rape and one count of forcible rape...." Our review of the record does not show Plaintiff submitted or produced any evidence to support his claim that he was characterized as a "serial rapist" in the print or broadcast media.
The first condition of the doctrine cannot be established because it has not been shown that Defendants exercised their First Amendment right to freedom of the press for the predominate purpose of causing harm. Defendants had a constitutional right and as their purpose to inform the public about a subject of public concern and public record in their newspaper article(s) and newscast(s). The only limitation is that the information be accurate at the time of their reporting. Furthermore, it was conceded that Plaintiff was arrested for the charges reported, which only leaves the issue of whether Plaintiff was mischaracterized which has not been shown.
The alternative argument that Defendants' newspaper article(s) and newscast(s) were for the purpose of exploiting the situation to generate revenue fails to satisfy this condition as well as the second condition requiring a lack of a serious motive. Defendants not only had a First Amendment right to publish their article(s) and newscast(s), they also provide a public service by providing information to the public about events of public concern. There is no basis in law or duty that these services be provided for free. Additionally, no evidence was brought forth, such as financial statements, to suggest that the sole motivation behind the article(s) or newscast(s) was monetary, or that Defendants profited abnormally from these particular article(s) or newscast(s).
The third condition of a violation of good faith, elementary fairness, or moral rules for the application of this doctrine also cannot be established, because the publishing and reporting on an official news release from the police department regarding an arrest made in an investigation is not a violation of any of the parameters of this condition. It was not alleged that the information contained in the article(s) or newscast(s) was false, unfair, or morally wrong, the only objection is to the characterization of Plaintiff as a "serial rapist" which has not been proven.
Lastly, the fourth condition cannot be established because no evidence has been put forth, other than conjecture that the motive and purpose were monetary, proving the article(s) and newscast(s) by Defendants were for purposes not intended by the right to freedom of speech and the press. We reiterate the reporting by Defendants of the news release and the subsequent reports regarding the prosecution of Plaintiff have not been shown to be for any purpose other than a valid exercise of their right to freedom of the press.
Under these facts, the abuse of rights doctrine cannot be invoked, and more importantly this Court is unwilling to invoke the doctrine in a case where one's First Amendment rights have been legitimately exercised. For these reasons, we find these arguments without merit.
DEFAMATION
"To prevail on a claim of defamation, plaintiff has the burden of proving by a preponderance of the evidence five essential elements: defamatory words, publication, falsity, malice and resulting injury. If even one of these elements is absent, the cause of action fails." Sommer v. *1045 State, Dept. of Transp. and Development, 97-1929, p. 25 (La.App. 4 Cir. 3/29/00), 758 So.2d 923, 939, writ denied, XXXX-XXXX, (La.10/27/00), 772 So.2d 122. Plaintiff asserts a claim of defamation based upon the characterization of him as a "serial rapist" in the newspaper article(s) and newscast(s).
Plaintiff claims the characterization of him, as a "serial rapist" is defamatory. "Defamatory words are those which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him." Id. However, the newspaper article(s) and newscast(s) only state Plaintiff was arrested on several counts of aggravated rape, and at no point in the article(s) or newscast(s) is Plaintiff referred to as a "serial rapist." The reporting of Plaintiff's arrest does not rise to the level of defamatory words. Falsity cannot be established because the charges of which Plaintiff was arrested and subsequently convicted were admitted in Plaintiff's brief as true.
Malice on the part of Defendants cannot be proven because there is only conjecture that the article(s) and newscast(s) were published for the sole purpose of generating profits and to depict Plaintiff in a bad light. Defendants have a constitutional right under the First Amendment to publish article(s) and air newscast(s) to inform the public, as well as generate a profit from their efforts.
Finally, Plaintiff cannot prove he suffered any injury from the publishing of his arrest. The article(s) and newscast(s) only reported of Plaintiff's arrest, which are matters of public record. Plaintiff claims the negative characterization of him in the media resulted in the public stereotyping him, which facilitated his conviction. However, the stereotyping Plaintiff claims to have experienced was not documented or explained. We do not find nor has any credible evidence been offered to prove Plaintiff suffered an injury from the reporting of his arrest.
Plaintiff's defamation claim is wholly without merit.
FALSE LIGHT AND INVASION OF PRIVACY
An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1389, citing, The Right of Privacy in Louisiana, 28 La.L.Rev. 469 (1968). The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Id.
Plaintiff is a public servant and his arrest on the charges of aggravated rape was a matter of public record. The media has a constitutional right under the First Amendment to freedom of speech and the press to publish information as long as the information was accurate at the time of its reporting. Plaintiff cannot demonstrate that Defendants' actions were unreasonable or seriously interfered with his privacy interests because the information contained in the article(s) and newscast(s) were matters of public record and they had a constitutional right to report the information. Finally, there is no evidence in the record that suggests Defendants portrayed Plaintiff in a false light.
CONSOLIDATION
Consolidation of causes of action is provided for under article 1561 of the Louisiana Code of Civil Procedure whereby:

*1046 A. When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding that common issues of fact and law predominate.
B. Consolidation shall not be ordered if it would do any of the following:
(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party. (Emphasis added)
However, under La. C.C.P. art 253.2, the cases may not be transferred or consolidated "... unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561."
Plaintiff asserts the trial court should have consolidated the civil cases of Darryl Coulon and Donald Brooks with his case because they "involv[ed] an identical set of facts and [were] against the same defendants." Cotton v. Gaylord Chemical Corp., 96-1834 (La.7/18/96), 678 So.2d 532. However, we find the trial court correctly decided they were not appropriate for consolidation because Plaintiff cannot establish any common issue of fact or law. The only similarities with the other two cases were their attorney of record, they were all police officers, and they were all African-American. Coulon's suit involves a January 20, 2000 newspaper article regarding his arrest for the unauthorized use of a credit card for theft on February 13 and 14, 1999, and Brooks' suit involves a January 14, 2000 newspaper article regarding his arrest for the attempted murder of Trent Griffin on November 27, 1997.[4] Furthermore, each case involved different defendants, which could lead to confusion and prejudice of the rights of Defendants in the case at bar.
TORT OF RACIAL PROFILING IN THE MEDIA
Plaintiff argues he was racially profiled in the media, and in support of his claim Plaintiff submitted the September/October 1998 Racism Watch article Media Blackface: "Racial Profiling" in News Reporting by Mikal Muharrar. Currently, Louisiana law does not recognize a cause of action for racial profiling in the media, and the issue of whether it should be a recognized tort is a determination to be made by the Louisiana legislature, not this Court.
ATTORNEY FEES AND COSTS UNDER ARTICLE 971
The trial court did not award attorney's fees and costs to Defendants. Under La. C.C.P. art. 971(B), "... a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees and costs." (Emphasis added). The language of the statute is clear that attorney fees must be awarded to a prevailing defendant. The trial court erred by not awarding Defendants reasonable attorney fees and costs.
CONCLUSION
We find La. C.C.P. art. 971 is constitutional and all challenges raised are without merit. We further find the trial court properly denied Plaintiff's Motion to Consolidate and properly granted Defendants' *1047 Special Motion to Strike under La. C.C.P. art. 971. Finally, the trial court erred in not awarding Defendants reasonable attorney fees and costs, and therefore this matter is remanded to the trial court.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
NOTES
[1] On February 10, 2001, appellant was found guilty of three counts of second degree kidnapping and five counts of forcible rape. He was sentenced to over 150 years in prison for all counts to be served concurrently over a thirty-year period without parole.
[2] In Plaintiff's briefs, reference is made to only one newspaper article by date; however, references are made to multiple articles and newscasts, but there are no dates, copies of the newspaper article(s), or copies of the newscast(s) transcripts that are being called into question. Defendants entered into the record a copy of the August 24, 1999 news release from the police department, the newspaper article published on August 25, 1999, and transcripts of the newscasts on August 24, 1999. The only statement Plaintiff has called into question is the alleged characterization of him as a "serial rapist" in the newspaper article. The court will address Plaintiff's claims as if the alleged "serial rapist" characterization applies to the newspaper article(s) and the newscast(s) for the sole purpose of writing this opinion because Plaintiff presents his arguments to the court in this manner.
[3] In People v. Health Laboratories of North America, Inc., et. al., (2001) 87 Cal.App.4th 442, 104 Cal.Rptr.2d 618, the constitutionality of the California anti-SLAPP statute was before the court. The California anti-SLAPP statute is very similar in form, language, and legislative intent to the La. C.C.P. art. 971. Since there are no other Louisiana cases which address or statutes which to compare Article 971, the court would like to point to the parallel issues raised in this California case. In that case, the court held that the statute did not violate the equal protection clause of the Fourteenth Amendment of the U.S. Constitution because the statute did not "impinge upon or implicate the fundamental right to free speech" nor did the classification "withhold the right to exercise free speech to anyone." Id. at 87 Cal.App.4th at 449, 104 Cal.Rptr.2d at 622.
[4] It should be noted that a different reporter wrote each newspaper article. Further, Plaintiff was convicted of his crime, Brooks was acquitted, and Coulon was nolle prosequied.