Judge Rosemary Ledet
This is a tort suit. The plaintiff, Henry Muller, sued the defendants-the Fort Pike Volunteer Fire Department (the "Department"), Bryan Gonzalez, and Kirk Jacobs *930 (collectively the "Defendants")-for defamation. In response, Mr. Jacobs filed an exception of no cause action; and the Defendants filed a special motion to strike the petition, pursuant to La. C.C.P. art. 971. In connection with the motion to strike, Mr. Muller caused a subpoena duces tecum to issue to the Department; and the Defendants filed a motion to quash the subpoena. The trial court granted Mr. Jacobs' exception and the Defendants' motions. From that judgment, Mr. Muller appeals. Answering Mr. Muller's appeal, the Defendants request attorney's fees and costs. For the reasons that follow, we affirm the trial court's judgment and remand the Defendants' request for attorney's fees and costs.
BACKGROUND
The Lake Catherine area (including Fort Pike) is a geographically remote part of New Orleans. Fire protection services are provided to the Lake Catherine area primarily by the New Orleans Fire Department and the Louisiana State Fire Marshall. Additionally, since 1952, the Department, a private entity organized under Louisiana law, has provided supplemental fire protection services to the Lake Catherine area.
To support the Department's volunteer efforts, the Legislature created the Fort Pike Fire Protection District, a public entity. See La. R.S. 40:1503.1 (the "Statute"); see also La. R.S. 40:1500 (providing that "[f]ire protection districts shall constitute public corporations"). The Statute provides that "the affairs of the district shall be managed by the members of the governing board of the [Department]" and authorizes the Department's board to levy, with the approval of qualified electors in the district, an annual ad valorem tax. La. R.S. 40:1503.1(D), (E).[1]
In mid-2017, Mr. Muller joined the Department. After joining the Department, Mr. Muller sent an email to the Department's chief, Charles Schmalz, who forwarded it to Mr. Gonzalez.[2] In the email, Mr. Muller stated that, under the Statute, the Department had been absorbed into the Fort Pike Fire Protection District and was thus "a public corporation by [s]tatute." Mr. Muller stated that, as matters stood, the Department was essentially "a private corporation operating under color of law as a [m]unicipality" and that "[o]perating a [m]unicipality like a private corporation could lead to serious problems."
One such problem, Mr. Muller suggested, was that doing so may constitute the crime of malfeasance in office under La. R.S. 14:134. Mr. Muller also suggested that all board meetings were now subject to the Open Meetings Law[3] and were, thus, required to be publicized at least one week in advance. Mr. Muller pointed out that violations of the Open Meetings Law are subject to private enforcement actions seeking, among other remedies, civil penalties for which violators may be personally liable.
On November 11, 2017, the Department held its monthly membership meeting. During the meeting, Mr. Jacobs invited Mr. Muller to address the issues raised in his email. Mr. Muller expressed concern that the board was not working well with the firemen, that recruitment efforts were *931 insufficient, and that operating under the title of "Fort Pike Fire Protection District" would assist in raising revenue. Mr. Jacobs then opened the floor for discussion.
At that time, Mr. Gonzalez addressed Mr. Muller's concern about the Department continuing to operate as a private entity. Mr. Gonzalez then explained that the Department does not receive any government revenue and does not operate as a municipality. The board's vice president, Michael Comisky, further explained why dissolution of the Department and reorganization as a fire protection district would be undesirable. Other members then expressed their views, and the meeting ended.
In the months following the meeting, Mr. Muller sent emails to Mr. Schmalz and the board members, expressing dissatisfaction with his treatment at the November 11, 2017 membership meeting and his intent to take legal action. In response, Mr. Gonzalez searched publicly available records for information about Mr. Muller. During his search, Mr. Gonzalez learned that Mr. Muller had been convicted of false impersonation of a peace officer. Mr. Gonzalez shared this information at a March 10, 2018 membership meeting; and the members voted to expel Mr. Muller from the Department.
A month later, Mr. Muller filed this suit. In his petition, Mr. Muller made the following allegations:
• That, at the November 11, 2017 membership meeting, Mr. Gonzalez had "verbally attacked [Mr. Muller] by stating that [Mr. Muller] made email 'threats' to him," that "[a]s a result of the vicious, malicious and unwarranted attack by [Mr.] Gonzales ... [Mr. Muller had] endured public humiliation, contempt, ridicule, [and] obloquy," and that his "reputation was irreparably damaged"; and
• That, at the March 10, 2018 membership meeting, the Defendants "discussed information about [Mr. Muller], obtained through an unauthorized background check, the purpose of which was to attempt to ridicule and shame [Mr. Muller] in public and for the purpose of reprisal"; and
• That Mr. Jacobs, as president, had a duty, but failed, "to control each meeting, its board members and the content discussed publically [sic]."
Based on these allegations, Mr. Muller asserted that the Defendants were liable to him for defamation.
In response, Mr. Jacobs filed an exception of no cause of action, contending that the petition failed to allege he personally defamed Mr. Muller and that he could not be held liable for any allegedly defamatory statements made by Mr. Gonzalez. The Defendants also filed a special motion to strike Mr. Muller's petition under La. C.C.P. art. 971, denying that Mr. Gonzalez had characterized Mr. Muller's email as a threat and, in the alternative, that even if Mr. Gonzalez had characterized the email as a threat, such speech was protected as a matter of law. In support, the Defendants submitted ten affidavits.[4]
After the exception and the motion to strike were set for hearing, Mr. Muller caused a subpoena duces tecum to issue to the Department to produce documents at the hearing. The Defendants moved to quash the subpoena, arguing that, under La. C.C.P. art. 971(D), discovery was automatically *932 stayed until the trial court ruled on the motion to strike.
On August 10, 2018, the parties appeared for a hearing on Mr. Jacobs' exception and the Defendants' motions. After a bench conference, the trial court indicated that these matters would be submitted on the pleadings. Subsequently, Mr. Muller filed an opposition, praying that Mr. Jacobs' exception and the Defendants' motions be denied. In support of his objection, Mr. Muller filed three affidavits.[5]
On November 14, 2018, the trial court granted Mr. Jacobs' exception of no cause of action and the Defendants' motion to strike the petition, dismissing Mr. Muller's claims. The trial court also granted the Defendants' motion to quash the subpoena duces tecum . Mr. Muller appealed.[6] The Defendants answered Mr. Muller's appeal, seeking attorney's fees and costs.
DISCUSSION
Mr. Muller assigns as error the trial court's rulings granting the Defendants' motion to quash the subpoena duces tecum and granting the Defendants' motion to strike the petition.[7] Before addressing Mr. Muller's arguments, an overview of the constitutional, statutory, and jurisprudential framework within which Mr. Muller's defamation claims are analyzed is appropriate.
Defamation is "an invasion of a person's interest in his reputation and good name." Sassone v. Elder , 626 So.2d 345, 350 (La. 1993) (citing W. Page Keeton, et al. , PROSSER AND KEETON ON THE LAW OF TORTS , § 111 (5th ed. 1984)). Like other states, Louisiana has long recognized a cause of action for defamation. See Costello v. Hardy , 03-1146, p. 13, n.10 (La. 1/21/04), 864 So.2d 129, 140 (observing that, "[s]ince at least 1840, the courts of this state have recognized that defamation is a quasi-offense governed by [La. C.C.] art. 2315").
Nonetheless, "not all defamatory statements are actionable." Fitzgerald v. Tucker , 98-2313, p. 11 (La. 6/29/99), 737 So.2d 706, 716. Both the United States and Louisiana constitutions guarantee the freedom of speech. U.S. CONST. , Amend. I (providing that "Congress shall make no law ... abridging the freedom of speech"); LA. CONST. , Art. I, § 7 (providing that "[n]o law shall curtail or restrain the freedom of *933 speech"). For example, it is well-settled that "[s]peech on matters of public concern enjoys enhanced constitutional protection." Romero v. Thomson Newspapers (Wisconsin), Inc. , 94-1105, p. 6 (La. 1/17/95), 648 So.2d 866, 869 (citing Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc. , 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) ). Indeed, "[a] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." Romero , 94-1105, p. 7, 648 So.2d at 870 (quoting Milkovich v. Lorain Journal Co. , 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990) ).
To protect speech on matters of public concern, the Legislature enacted La. C.C.P. art. 971, commonly referred to as Louisiana's anti-SLAPP statute.[8] See Lee v. Pennington , 02-0381, p. 4 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041 (observing that " Article 971 was enacted by the legislature as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press"). Under La. C.C.P. art. 971, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim."[9] La. C.C.P. art. 971(A)(1).
In considering a motion to strike, courts apply a two-part, burden-shifting analysis. The Louisiana Supreme Court has described the analysis as follows:
[T]he mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. If the mover makes a prima facie showing that his comments were constitutionally protected and in connection with a public issue, the burden shifts to the plaintiff to demonstrate a probability of success on the claim. In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. If the plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail.
Shelton v. Pavon , 17-0482, pp. 5-6 (La. 10/18/17), 236 So.3d 1233, 1237 (citations omitted). To carry their respective burdens, the parties may submit affidavits;
*934 and the trial court, in making its determination, "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." La. C.C.P art. 971(A)(2).
In reviewing a trial court's judgment on a motion to strike, as in all cases raising First Amendment issues, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Bose Corp. v. Consumers Union of U.S., Inc. , 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting New York Times Co. v. Sullivan , 376 U.S. 254, 284-86, 84 S.Ct. 710, 728-729, 11 L.Ed.2d 686 (1964) ) (quotation marks omitted).[10] Thus, a trial court's judgment on a motion to strike is reviewed de novo . Shelton v. Pavon , 16-0758, p. 3 (La. App. 4 Cir. 2/15/17), 212 So.3d 603, 606, aff'd , 17-0482 (La. 10/18/17), 236 So.3d 1233 ; see also Yount v. Handshoe , 14-0919, p. 5 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 384 (citing Thinkstream, Inc. v. Rubin , 06-1595, p. 8 (La. App. 1 Cir. 9/26/07), 971 So.2d 1092, 1100 ).
Turning to Mr. Muller's arguments, he contends that he was entitled to conduct discovery in order to defend against the motion to strike. Thus, he contends, the trial court's ruling granting the motion to quash the subpoena duces tecum was error; and the trial court's ruling granting the motion to strike was premature. We address each ruling separately.
Motion to Quash
As the Defendants point out, under La C.C.P. art. 971(D), "[a]ll discovery proceedings in [a defamation action] shall be stayed upon the filing of a notice of [a] motion [to strike]" and "[t]he stay of discovery shall remain in effect until notice of entry of the order ruling on the motion." Mr. Muller acknowledges that "[o]nce th[e] motion was file[d] it barred [him] from doing any discovery," but he contends that the statutory stay of discovery denied him "access to the Court to properly defend or prosecute anything under [this] case."
Mr. Muller's access-to-courts argument sounds in due process. See LA. CONST. , Art. I, § 22 (providing that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights"); see also Lee v. Pennington , 02-0381, pp. 6-7 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1043 (considering whether La. C.C.P. art. 971, as a whole, denied the plaintiff access to courts and, thus, due process). The record, however, does not reflect that Mr. Muller ever challenged the statutory stay of discovery on this basis in the trial court. Accordingly, the access-to-courts issue is not properly before us on appeal. See Bellard v. Louisiana Corr. & Indus. Sch. , 95-0157, p. 5 (La. 10/16/95), 661 So.2d 430, 432 (observing that "[t]he law is well settled that an attack on a statute's constitutionality must be pleaded *935 in the trial court and may not be asserted for the first time on appeal").[11]
In any event, La. C.C.P. art. 971(D) permitted Mr. Muller to obtain discovery by filing a motion requesting discovery of specific items and showing good cause for such requests. See La. C.C.P. art 971(D) (providing that, notwithstanding the statutory stay, "the court, on noticed motion and for good cause shown, may order that specified discovery be conducted").[12]
Motion to Strike[13]
In his petition, Mr. Muller asserted two defamation claims-one relating to the November 11, 2017 membership meeting; the other relating to the March 10, 2018 membership meeting. We address each claim separately, applying the burden-shifting analysis described in Shelton . Accord Yount , 14-919, pp. 6-7, 171 So.3d at 386 (observing that "[i]n those cases where more than one claim is alleged in the petition, courts examine the probability of success of each claim individually") (citing Darden v. Smith , 03-1144, p.8 (La. App. 3 Cir. 6/30/04), 879 So.2d 390, 397 ; Melius v. Keiffer , 07-0189, p. 5 (La. App. 4 Cir. 3/12/08), 980 So.2d 167, 172 ).
Mr. Muller's First Claim
Mr. Muller's first claim is that "[o]n or about November 11, 2017, at a public membership meeting of the [Department], ... [Mr.] Gonzales as Secretary verbally attacked [Mr. Muller] by stating that [Mr. Muller] made email 'threats' to [Mr. Gonzalez], when [Mr. Gonzalez] was president of the [Department], and [to] its present presiding Board." We consider first whether the Defendants offered sufficient evidence to shift the burden to Mr. Muller.
The Defendants' affidavits attest that, in the months leading up to the November 11, 2017 membership meeting, Mr. Muller sent an email to a member of the Department's administration raising concerns about the entity's legal status and asserting *936 that the manner in which the entity was being administered could have consequences not only for the Department itself but also for the individuals responsible for its administration. The affidavits further attest that, at the November 11, 2017 membership meeting, Mr. Gonzalez questioned Mr. Muller about his email and that a related discussion among the members followed.
The Defendants contended in the trial court that these affidavits established that "[t]he allegedly defamatory statements here were made in connection with the parties' public debate on the best way to provide efficient and adequate fire protection and prevention services to the citizens of the Lake Catherine area." Thus, the Defendants contended, Mr. Gonzalez' statement was "conduct in furtherance of the exercise of ... the constitutional right of free speech in connection with a public issue or an issue of public interest." Continuing, the Defendants contended that "[b]ecause the statements concern an issue of public concern, the burden shift[ed] to [Mr.] Muller to establish a probability of success on his claim." See La. C.C.P. art. 971(F)(1)(d). We agree.
A matter of public concern is "any matter of political, social, or other concern to the community." Connick v. Myers , 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Whether speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. , 461 U.S. at 147-48, 103 S.Ct. at 1690 ; see also Kennedy v. Sheriff of E. Baton Rouge , 05-1418, p. 9, n. 6 (La. 7/10/06), 935 So.2d 669, 677. "Speech on matters directly affecting the health and safety of the public is obviously a matter of public concern." Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1 , 131 F.3d 564, 578 (6th Cir. 1997).
As the Defendants point out, the Legislature has declared it "the public policy of Louisiana that volunteer firefighting is vital to public safety," La. R.S. 37:1735, and that because "volunteer fire departments make up the vast majority of fire departments in the state.... [p]articipation in volunteer fire departments is vital to public safety," La. R.S. 40:1558.1. Indeed, it has been observed, albeit in a different but related context, that "[f]ew subjects are of more public concern ... than the provision of basic fire and rescue services." Beckwith v. City of Daytona Beach Shores , 58 F.3d 1554, 1564 (11th Cir.1995) ; see also Brasslett v. Cota , 761 F.2d 827, 844, n. 14 (1st Cir.1985) (observing that comments by fire chief to local press concerning a town's level of fire protection related to a "prototypical matter of public interest"). Thus, "comments about funding and training in [a] fire department [are] also matters of public concern." Rodin v. City of Coral Springs, Fla. , 229 F. App'x 849, 853 (11th Cir. 2007).
Mr. Muller's email addressed the manner in which the Department should be administered and financed. These are matters of public concern. Mr. Gonzalez' statement was made during a discussion of these matters and was, thus, made in connection with a matter of public concern. Accordingly, Mr. Gonzalez' statement was "conduct in furtherance of the exercise of [his] constitutional right of ... free speech in connection with a public issue or an issue of public interest." La. C.C.P. art. 971(F)(1)(d). Thus, the burden shifted to Mr. Muller to demonstrate a probability of success on his first claim.
To demonstrate a probability of success, Mr. Muller was required to allege and offer evidence to support each of the following elements of defamation: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting *937 injury. Cangelosi v. Schwegmann Bros. Giant Super Markets , 390 So.2d 196, 198 (La. 1980). "If even one of the required elements is found lacking, the cause of action fails." Costello v. Hardy , 03-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 140.
As to Mr. Muller's first claim, the element of falsity is lacking. Mr. Gonzalez' statement characterizing Mr. Muller's email as a threat was a statement of opinion and was, thus, neither true nor false. See Bussie v. Lowenthal , 535 So. 2d 378, 381 (La. 1988) (observing that "[a] pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation" because "a purely subjective statement can be neither true nor false"); see also Romero v. Thomson , 94-1105, p. 7 (La. 1/17/95), 648 So.2d 866, 870 (observing that "[a] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection") (quoting Milkovich v. Lorain Journal Co. , 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 ).
Accordingly, Mr. Muller cannot demonstrate a probability of success on his first claim. We nonetheless consider his second claim. Accord Yount v. Handshoe , 14-919, p. 7 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 386 (observing that, "[i]f the plaintiff can demonstrate a probability of success on any claim, then the motion must fail").
Mr. Muller's Second Claim
Mr. Muller's second claim is that, "[a]t a public membership meeting of [the Department] held on March 10, 2018, [the] [D]efendants discussed information about [Mr. Muller], obtained through an unauthorized background check, the purpose of which was to attempt to ridicule and shame [him] in public and for the purpose of reprisal." Applying Shelton 's burden-shifting analysis, we first consider whether the Defendants' evidence was sufficient to shift the burden to Mr. Muller.
The Defendants' affidavits attest that Mr. Gonzalez "searched publicly available records and discovered, among other things, that Mr. Muller had been convicted of impersonating a police officer." Mr. Gonzalez brought this information to the attention of the Department's members at the March 10, 2018 meeting; and, in light of that information, the members voted to expel Mr. Muller from the Department.
Again, the provision of fire protection services is a matter of public concern. By extension, the employment decisions of an entity providing such services also are a matter of public concern. Thus, Mr. Gonzalez' statement bringing Mr. Muller's conviction to the attention of the Department's members was a statement made in connection with a matter of public concern. Accordingly, we find Mr. Gonzalez' statement was "conduct in furtherance of the exercise of [his] constitutional right of ... free speech in connection with a public issue or an issue of public interest." La. C.C.P. art. 971(F)(1)(d). Thus, the burden shifted to Mr. Muller to demonstrate a probability of success on his second claim.
Mr. Muller acknowledges his conviction. Because Mr. Muller acknowledges his conviction, the element of falsity is lacking. See Lee v. Pennington , 02-0381, p. 10 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1045 (observing that"[f]alsity cannot be established because the charges of which Plaintiff was arrested and subsequently convicted were admitted in Plaintiff's brief as true"). Thus, Mr. Muller cannot demonstrate a probability of success on his second claim.
Summarizing, because Mr. Muller cannot demonstrate a probability of success on either of his claims, the trial court did *938 not err in granting the Defendants' motion to strike and dismissing both of Mr. Muller's claims.[14]
REQUEST FOR ATTORNEY'S FEES AND COSTS
The Defendants filed an answer to Mr. Muller's appeal, requesting their attorney's fees and costs incurred in connection with the appeal. We remand this request to the trial court.
DECREE
For the foregoing reasons, the trial court's judgment is affirmed, and the Defendants' request for attorney's fees and costs is remanded.
AFFIRMED; REQUEST FOR ATTORNEY'S FEES AND COSTS REMANDED

As of the filing of this suit, however, the Department's board had not exercised its authority to seek approval for and impose a tax; rather, at all times relevant to this suit, the Department has operated as a private entity.

At the time, Mr. Gonzalez was the board's president. Subsequently, Mr. Jacobs' became the board's president; and Mr. Gonzalez became the board's secretary.

See La. R.S. 42:11, et seq.

The affiants were Mr. Gonzalez; Mr. Jacobs; Mr. Schmalz; Mr. Comisky; and six other individuals who were present at the November 11, 2017 membership meeting.

The affiants were Mr. Muller; Mr. Muller's wife, Barbara Muller; and Fernand Webber, who was present at both the November 11, 2017 and March 10, 2018 membership meetings.

In his motion for appeal, Mr. Muller prayed for leave to appeal "suspensively or in the alternative devolutively." In its order, the trial court granted Mr. Muller, who was proceeding in forma pauperis , a suspensive appeal but noted he was required to pay an appeal bond. See La. C.C.P. art. 5185(B) (providing that, although an in forma pauperis party is entitled to a devolutive appeal, "[h]e is not entitled to a suspensive appeal ... unless he furnishes the necessary security therefor"). The record does not reflect that Mr. Muller paid the appeal bond. Accordingly, we convert his suspensive appeal to a devolutive appeal. Accord Franco v. Franco , 04-0967, p. 14 (La. App. 4 Cir. 7/28/04), 881 So.2d 131, 139 (observing that "[i]n ordinary proceedings, a failure to pay a suspensive appeal bond is not generally considered grounds for dismissal because the appeal is simply converted to a devolutive appeal when the appeal bond is not timely paid" and, thus, converting a suspensive appeal to a devolutive appeal where the appellant failed to timely pay the appeal bond). To the extent Mr. Muller assigns as error on appeal that the Defendants have continued to litigate other issues in the trial court, we regard such assignment as moot.

We liberally construe Mr. Muller's pro se appellate brief. See Manichia v. Mahoney , 10-0087, p. 8 (La. App. 4 Cir. 8/4/10), 45 So.3d 618, 622 (observing that "a pro se litigant may be afforded some leeway or patience in the form of liberally construed pleading").

" 'SLAPP' is an acronym for Strategic Lawsuit Against Public Participation." Yount v. Handshoe , 14-919, p. 9 (La. App. 5 Cir. 5/28/15), 171 So.3d 381, 387.

As used in La. C.C.P. art. 971, and act in furtherance of a person's right of petition or free speech includes, but is not limited to, the following:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
La. C.C.P. art. 971(F)(1).

See also Mashburn v. Collin , 355 So.2d 879, 886-87 (La. 1977) (observing that although "[i]t is true that, as a general rule, a Louisiana appellate court should not disturb the reasonable findings and inferences of fact of a trial judge or jury, even though the appellate court may feel that its own evaluations and inferences are as reasonable ... when interpretation of a communication in the light of the constitutional requirements is involved, our scope of review is to examine in depth the statements in issue and the circumstances under which they were made ... and to re-examine the evidentiary basis of the lower court decision in the light of the Constitution") (quotation marks and citations omitted).

The requirement that a constitutional challenge must be presented first to the trial court is not a formality. The attorney general, who is responsible for defending the constitutionality of Louisiana's statutes, is entitled to notice of any such challenge and an opportunity to be heard. La. C.C.P. art. 1880 (providing that "[i]f [a] statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard").

There is a dearth of Louisiana jurisprudence specifically considering the constitutionality of La. C.C.P. art. 971(D). In the absence of controlling jurisprudence, Louisiana courts have regarded California jurisprudence interpreting Cal. Civ. Proc. Code § 425.16 -California's anti-SLAPP statute-which is "virtually identical" to La.C.C.P. art. 971, as persuasive. See Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich , 878 F. Supp. 2d 662, 670, n. 17 (E.D. La. 2012) (observing that "Louisiana courts have specifically noted the similarities between article 971 and California's anti-SLAPP statute and have looked to California case law in the absence of precedential Louisiana authority on point"); see also, e.g. , Baxter v. Scott , 37,092, pp. 8-9 (La. App. 2 Cir. 5/16/03), 847 So.2d 225, 231 (relying on California jurisprudence interpreting California's anti-SLAPP statute as support for the two-part burden-shifting analysis later discussed in Shelton ), judgment vacated on other grounds , 03-2013 (La. 11/14/03), 860 So.2d 535. California jurisprudence has expressly upheld the statutory stay of discovery as constitutional, precisely "because the statute permits a plaintiff to seek discovery by filing a motion and showing good cause." Lafayette Morehouse, Inc. v. Chronicle Publ'g Co. , 37 Cal. App. 4th 855, 867, 44 Cal. Rptr. 2d 46, 53 (1995).

Other than his discovery argument, Mr. Muller does not expressly contend that the trial court erred in granting the motion to strike. Nonetheless, the Defendants have briefed the merits of the motion to strike. Given Mr. Muller's pro se status, we consider the merits of the trial court's judgment granting the motion to strike.

Because we affirm the trial court's judgment on the basis of the ruling granting the motion to strike, we pretermit consideration of the trial court's ruling on Mr. Jacobs' exception of no cause of action.