**LATOYA W. CANTRELL**          *          **NO. 2024-CA-0716**

**VERSUS**                      *

                                           **COURT OF APPEAL**

**ANNE W. BREAUD**              *

                                           **FOURTH CIRCUIT**

                                *

                                           **STATE OF LOUISIANA**

                    * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-04268, DIVISION "K"
Honorable Bernadette D'Souza, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Karen K. Herman)

**LOBRANO, J. DISSENTS WITH REASONS**


Edward J. Castaing, Jr.
CRULL CASTAING & LILLY
601 Poydras Street
2323 Pan American Life Center
New Orleans, LA 70130


          COUNSEL FOR PLAINTIFF/APPELLANT


Justin B. Schmidt
LAW OFFICE OF JUSTIN B. SCHMIDT, LLC
1506 7th Street
New Orleans, LA 70115


          COUNSEL FOR DEFENDANT/APPELLEE


                                        **AFFIRMED**

                                        **JUNE 9, 2025**

*DLD*
*KKH*
In this alleged stalking case, the plaintiff, LaToya W. Cantrell, Mayor of the City of New Orleans, appeals the trial court's: denial of her exception of no cause of action; granting of the defendant's, Anne W. Breaud, special motion to strike plaintiff's petition for protection from stalking or sexual assault pursuant to La. C.C.P. art. 971; and awarding Ms. Breaud legal fees and costs pursuant to La. C.C.P. art. 971.

**FACTS AND PROCEDURAL HISTORY**

On the afternoon of Sunday, April 7, 2024, from the balcony of her residence at the Upper Pontalba Apartments, Ms. Breaud took photographs of Mayor Latoya Cantrell and NOPD Officer Jeffrey Vappie, a member of the mayor's security detail, while the two were seated at a table on the Chartres Street side balcony of the Tableau Restaurant, located in the French Quarter.

On May 9, 2024, Mayor Cantrell filed an official police report (NOPD Incident No. E-08673-24) setting out the alleged criminal actions of Ms. Breaud of the taking the photos, which took place on April 7, 2024. On May 10, 2024,

Mayor Cantrell filed a "Petition for Protection From Stalking or Sexual Assault (hereinafter referred to as the "Restraining Order") pursuant to La. R.S. 46:2171, *et seq.* against Ms. Breaud in Orleans Parish Civil District Court. The petition and order were on a form that Mayor Cantrell filled in prior to her *pro se* filing. In summary, the petition for the Restraining Order set out that Ms. Breaud had followed her, harassed her and was an uninvited presence. In her own handwriting, Mayor Cantrell set forth that the "[a]ctions of the defendant have placed me and my family in greater risk of being harmed, jeopardizing my safety especially at places I frequent." She further provided that "[T]he defendant aggressively photographed and harassed me while I was having lunch on a restaurant balcony." The trial court granted the petition and on May 10, 2025, a temporary restraining order/order of protection ("TRO") was issued and a contradictory rule to show cause hearing was set for May 20, 2024, to determine whether the temporary restraining order should be continued. On May 17, 2024, Ms. Breaud filed a "Special Motion to Strike the Petition for Protection from Stalking or Sexual Assault Pursuant to La. C.C.P. art. 971 (hereinafter referred to as the "Motion to Strike").[1]

On May 20, 2024, the parties mutually agreed to continue the rule to show cause hearing until June 18, 2024. On June 5, 2024, Mayor Cantrell filed a Peremptory Exception of No Cause of Action in response to Ms. Breaud's Motion

---

[1] This article provides for a mechanism available to defendants named in Strategic Lawsuits Against Public Participation or "SLAPP Suits" which are generally filed against individuals to quell their participation in public matters and discourse.

to Strike. Following the June 18, 2024 hearing, the district court denied Mayor Cantrell's Exception of No Cause of Action, granted Ms. Breaud's Motion to Strike, and further, awarded Ms. Breaud attorney's fees and costs in the amount of $15,393.52. The district court issued a signed judgment on August 26, 2024. Mayor Cantrell appeals the district court's judgment. As a response to the appeal, Ms. Breaud seeks an additional award of attorney's fees and costs incurred in defending this appeal.

**DISCUSSION**

Mayor Cantrell raises the following assignments of error: (1) the trial court erred when it rendered its judgments on June 18 and August 26, 2024; (2) the trial court erred when it denied Mayor Cantrell's peremptory exception of no cause of action, and granted Ms. Breaud's special motion to strike under La. C.C.P. art. 971, ordering legal fees and costs against Mayor Cantrell; (3) the trial court erred when it struck Mayor Cantrell's petition from the record; (4) the trial court erred when it held, in essence, that stalking and taking photographs, and other non-speech allegations in Mayor Cantrell's petition, constituted speech, or free speech, under La. C.C.P. art. 971; and (5) the trial court erred when it held that Ms. Breaud's right of free speech was violated by Mayor Cantrell's petition and the TRO issued thereunder. In response, Ms. Breaud seeks an additional award of legal fees and costs associated with defending Mayor Cantrell's appeal.

An appellate court reviews an exception of no cause of action *de novo*. *Adema v. S. Nat. Gas Co., L.L.C.*, 23-0052 p. 2 (La. App, 4 Cir. 5/1/23), 367 So.3d

773, 776 *citing Succession of Horrell*, 21-0168, p. 7 (La. App. 4 Cir. 11/17/21), 331 So.3d 1072, 1079. When reviewing a trial court's ruling sustaining or overruling an exception of no cause of action, the court of appeal should review the case *de novo* because the exception raises a question of law and the "lower court's decision is based only on the sufficiency of the petition." *City of New Orleans v. Bd. Of Comm'rs of Orleans Levee Dist.*, 93-0690, p. 28 (La. 7/5/94), 640 So.2d 237, 253.

Likewise, "[a]ppellate courts review a trial court's ruling on a special motion to strike using the de novo standard of review because it involves an issue of law; the issue on review is thus whether the trial court was legally correct." *Alexander v. Times-Picayune, L.L.C.*, 16-1134, p. 2 (La. App. 4 Cir. 5/31/17), 221 So.3d 198, 201 quoting *Herman v. Tracage Dev., L.L.C.*, 16-0082, p. 4 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 939.

We first address the denial of Mayor Cantrell's exception of no cause of action. La. C.C.P. art. 921 provides that "[a]n exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or incidental action, to retard, dismiss, or defeat the demand brought against him." *See also Dean v. Delacroix Corp.*, 04-0831, p. 10 (La. App. 4 Cir. 5/11/05), 904 So.3d 46, 52. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "The purpose of the peremptory exception of no cause of action is to determine the

4

sufficiency in law of the petition." *City of New Orleans v. Bd. of Directors of the Louisiana State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755. "The burden of showing that the plaintiff has stated no cause of action is upon the exceptor." *Id.*

La. C.C.P. art. 971 "was enacted by the legislature as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." *Perniciaro v. McInnis*, 19-067 (La. App. Cir. 4/1/20), 293 So.3d 1144, 1152 (quoting *Lee v. Pennington*, 02-0381, p. 4 (La. App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041). La. C.C.P. art. 971(A) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

Here, Ms. Breaud properly plead a cause of action in her pleading seeking to strike the Mayor's petition "… the claims therein arise from an exercise of free speech under the Louisiana and U.S. Constitutions…" As such we find no error in the trial court's denial of the exception of no cause of action.

We next review Mayor Cantrell's complaint that the trial court erred in striking her petition from the record. La. C.C.P. art. 964 states: "The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter." In enacting La. C.C.P. art. 971, the

5

Louisiana Legislature recognized that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances" and "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through the abuse of the judicial process. 1999 La. Acts, No. 734, Sec. 2. As stated above, "unless the court determines that the plaintiff has established a probability of success on the claim," such claim "shall be subject to a special motion to strike." La. C.C.P. art. 971(A); *see also Shelton v. Pavon*, 17-0482 (La, 10/18/17), 236 So.3d 1233; *Darden v. Smith*, 03-1144, p. 8 (La. App. 3 Cir. 06/30/04), 879 So.3d 390, 397. Here, it appears that Mayor Cantrell's action against Ms. Breaud was clearly designed to suppress, restrain and prohibit her rights provided under the United States and Louisiana Constitutions, including the exercise of taking photos of a public figure in a public place. Further, it was unlikely that Mayor Cantrell's petition for protection against Ms. Breaud would be successful. Accordingly, the trial court properly struck Mayor Cantrell's petition from the record.

In her fourth assignment of error, Mayor Cantrell contends that the trial court erred in holding that stalking, taking photographs, and other non-speech activities constituted free speech under La. C.C.P. art. 971. She argues that the actions sought to be enjoined are for non-verbal, non- speech stalking and photography; that she never sought to enjoin Ms. Bread's exercise of free speech; that CCP article 971 only contemplates an oral or written speech element, and that the activities complained of by Ms. Breaud are not afforded the protections set forth in 971.

We disagree and find that Mayor Cantrell's interpretation of free speech as contemplated by CCP article 971 to be unduly narrow. The United States Supreme Court has held that streets, sidewalks, and parks have historically been held to be in trust for public use and are arenas for free expression. *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The courts have further recognized the public's right to record matters of public interest, especially in public forums. *Id.* In *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the Supreme Court held that conduct can be protected under the First Amendment if it is intended to convey a message and it is likely to be understood by those who view it. In *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995), the Supreme Court recognized that the selection and presentation of visual and other expressive elements constitute speech.

The federal courts of appeal have also recognized that various non-speech activities are protected by the First Amendment. In *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), the First Circuit held that the First Amendment protects the right to record public officials in public spaces. In *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017), the Third Circuit reaffirmed that the act of taking photographs or videos in public, particularly of public officials, is protected by the First Amendment.

Here, Ms. Breaud, while standing on her own balcony, took photographs of Mayor Cantrell and her security officer as they were seated at a table on the balcony of a restaurant just across from her residence. Clearly, Ms. Breaud was within her constitutionally protected rights while observing and photographing this openly public activity. Ms. Breaud's activities were plainly and fundamentally

protected by the First Amendment. Accordingly, we find no error in the trial court's holding that Ms. Breaud's activities constituted speech or free speech as contemplated by La. C.C.P. art. 971.

In her final assignment of error, Mayor Cantrell contends that the trial court erred when it held that Ms. Breaud's right of free speech was violated by Mayor Cantrell's petition for protection and the TRO issued thereunder. Ms. Breaud asserts that Mayor Cantrell's filing of her May 10, 2024 petition for protection was in retaliation against Ms. Breaud for the public scrutiny that Ms. Breaud's April 7, 2024 photographs of Mayor Cantrell and Officer Vappie brought to light. Mayor Cantrell did not immediately report the April 7, 2024 incident to the New Orleans Police Department, but waited until May 9, 2024 to call the NOPD to her office to file a police report, which she used to bolster her allegations in her May 10, 2024 petition for protection. As discussed above, Ms. Breaud opposed Mayor Cantrell's petition for protection with the special motion to strike afforded by La. C.C.P. art. 971, the provision created by the legislature for instances where a citizen's right of freedom of speech is sought to be curtailed improperly through the judicial process. As set forth above, we find that Ms. Breaud's actions in taking photographs were protected by the First Amendment. Accordingly, we affirm the trial court's holding that Ms. Breaud's right of free speech was sought to be curtailed by the Mayor's injunctive request.

The trial court awarded Ms. Breaud attorney's fees and costs in the amount of $15,393.52. La. C.C.P. art 971(B) states: "In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs." Considering the mandatory language of La. C.C.P. art 971(B), we are bound to award Ms. Breaud reasonable attorney's fees

and costs for this appeal. Accordingly, we award Ms. Breaud $8,000.00 for attorney's fees and all costs related to this appeal.

**CONCLUSION**

For the above and foregoing reasons, the judgment of the trial court is affirmed. We also grant Ms. Breaud $8,000.00 in attorney's fees associated with this appeal as well as all costs.

**AFFIRMED**