Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,048-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GEORGE E. "ERIC" HATFIELD,          Plaintiffs-Appellants
AMY LEIGH SENN, MINOR
CHILD, T.R.H., MINOR CHILD,
B.C.H.

versus

BOBBY HERRING, DET. WITH          Defendants-Appellees
CADDO PARISH SHERIFF DEPT.,
DANNY LAWLER,
MEMBER/MANAGER/
AUCTIONEER WITH DANNY
LAWLER ENTERPRISES, LLC,
KEN LAWLER, DAVID LAWLER

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 621,359

Honorable Ramon Lafitte, Judge

* * * * *

GILLEY & GILLEY                    Counsel for Appellants
By: Patricia A. Gilley

GEORGE E. HATFIELD                 In Proper Person,
AMY L. SENN                        Appellants

PETTIETTE, ARMAND, DUNKELMAN,      Counsel for Appellee,
WOODLEY, BYRD & CROMWELL, LLC      Bobby Herring
By: Edwin H. Byrd, III

RONALD J. MICIOTTO

STERNBURG, NACCARI & WHITE, LLC
By: Scott L. Sternburg

Counsel for Appellees,
Danny Lawler, Ken
Lawler, David Lawler

* * * * *

Before PITMAN, STONE, and THOMPSON, JJ.

**THOMPSON, J.**

A longstanding acrimonious relationship between the plaintiffs and the defendants gives rise to this defamation action by an elected official who was a contemporary candidate for another office. Additional plaintiffs include his girlfriend and their two minor children against various individuals, including the owner of a tabloid newspaper, for unflattering publications, actions, and statements. Plaintiffs appeal from a trial court judgment dismissing their suit with prejudice, pursuant to Louisiana's anti-SLAPP (strategic lawsuits against public participation) statute, La. C.C.P. art. 971, which protects free speech in connection with a public issue, such as opinion relative to a candidate's fitness for public office. For the following reasons, we affirm the trial court and remand for further proceedings.

## FACTS

The plaintiffs are Eric Hatfield ("Hatfield"), a Caddo Parish constable, and Amy Leigh Senn ("Senn"), his partner, and their minor children. The defendants are Bobby Herring ("Herring"), who is a Caddo Parish sheriff's deputy, Danny Lawler ("Lawler"), who is the former owner of the weekly newspaper "The Inquisitor," and Ken Lawler and David Lawler, who are his brothers. At all times relative herein, Hatfield held public elected office and was also either a candidate who qualified for an upcoming election for Sheriff of Caddo Parish in 2015 and 2019, or had announced he would be a candidate seeking to be re-elected to his position as a Constable in Caddo Parish.

The record indicates that Hatfield and Senn have a longstanding and very public, acrimonious relationship with Lawler, which includes ongoing competing attacks, ranging from personal interactions to a variety of allegations across various social media platforms. Lawler, primarily through his use of articles in his publication "The Inquisitor" and social media sites, and Hatfied and Senn, through social media, remained embattled during the 2015 and 2019 election cycles when Hatfield was a candidate for Caddo Parish Sheriff. Lawler supported the incumbent in both of those elections. Some of the interactions between these parties during this time period resulted in misdemeanor criminal charges against Senn for pouring a glass of water on Lawler, this litigation instituted by Hatfield, as well as other defamation litigation instituted by Lawler's wife against Hatfield and Senn.

In the present matter, the catalyst for the lawsuit was a series of billboards, a website, and a dancing Santa and elves that all featured the phrase "Lying Eric" and highlighted the website, LyingEric.com. Lawler admits to owning and running the website and having organized the billboards and dancing Santa in 2019. Lawler asserted that Hatfield's expressed qualifications to hold and seek public office, as well as his business and personal dealings, were in conflict with various public records, some of which included court records of litigation involving Hatfield.

In December, 2019, Hatfield and Senn filed suit against the defendants for defamation, invasion of privacy, and intentional infliction of emotional distress. Herring and the Lawlers filed special motions to strike, citing La. C.C.P. art. 971, which provides a First Amendment defense to a

cause of action arising from an act by a person in furtherance of the person's right to petition or free speech.

The plaintiffs filed a motion to recuse the trial judge, Judge Ramon Lafitte, and on February 18, 2020, a hearing on the motion was held before Judge Charles Tutt. Judge Tutt denied the motion and remanded the matter to Judge Lafitte. On March 4, 2020, the trial court held a hearing on the special motions to strike, and both parties presented argument. The Lawlers subsequently filed a motion to sanction plaintiffs' counsel for filing the original complaint without a verification. A hearing on the motion for sanctions was conducted, with plaintiffs' counsel testifying. The trial court denied the motion for sanctions. The Lawlers also filed a motion for sanctions against plaintiffs' counsel related to her motion to recuse the trial court judge, which was denied by the trial court without a hearing.

On June 18, 2020, the trial court ruled on the motions to strike, granting both motions and dismissing all of the plaintiffs' claims with prejudice. The October 9, 2020, judgment dismissed all of the plaintiffs' claims with prejudice and awarded the Lawlers attorney fees for their New Orleans counsel in the amount of $11,925.39, their local counsel in the amount of $7,125.00, and awarded Herring attorney fees in the amount of $8,730.00. This appeal followed.

**DISCUSSION**

The right to free speech is guaranteed in the constitutions of both the United States and Louisiana. The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging the freedom of speech, or the press[.]" The Louisiana Constitution art. 1, § 7

3

states that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

In 1999, the Louisiana legislature found that "there had been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." La. C.C.P. art. 971. These lawsuits are referred to as strategic lawsuits against public participation (or "SLAPP"). The legislature enacted Article 971 intending to encourage continued participation in matters of public significance and to prevent participation from being chilled through an abuse of judicial process. *Wainwright v. Tyler*, 52,083 (La. App. 2 Cir. 6/27/18), 253 So. 3d 203; *Lee v. Pennington*, 02-0381 (La. App. 4 Cir. 10/06/02), 830 So. 2d 1037, 1041, *writ denied*, 02-2790 (La. 1/24/03), 836 So. 2d 52. The legislature enacted Article 971 as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. *Quinlan v. Sugar-Gold*, 53,348 (La. App. 2 Cir. 3/11/20), 293 So. 3d 722, *writ denied*, 20-00744 (La. 10/6/20), 302 So. 3d 536. A special motion to strike is a "specialized defense motion akin to a motion for summary judgment." *Lamz v. Wells*, 05-1497 (La. App. 1 Cir. 6/9/06), 938 So. 2d 792.

La. C.C.P. Art. 971 provides in pertinent part:

A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

4

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.

B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.

Article 971 further authorizes a stay on all discovery proceedings in the action upon the filing of the special motion, and the stay remains in place until notice of entry of the order ruling on the motion. La. C.C.P. art. 971(D). Finally, Article 971 defines an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." La. C.C.P. art. 971(F)(1)(c).

Louisiana jurisprudence interprets Article 971 as requiring a two-part, burden-shifting analysis. *Wainwright*, *supra*. The mover must first establish that the claims against him arise from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue. *Id.* If the mover makes a *prima facie* showing that his comments were constitutionally protected and in connection with a public issue, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim as the second part of the analysis. In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. If the

5

plaintiff can demonstrate a probability of success on any of his claims, then the special motion to strike must fail. *Shelton v. Pavon*, 17-0482 (La. 10/18/17), 236 So. 3d 1233.

The granting of a special motion to strike presents a question of law. Questions of law are reviewed *de novo*, with the judgment rendered on the record, without deference to the legal conclusions of the tribunals below. *Quinlan*, *supra*.

## Assignments of Error

Plaintiffs assert the following four assignments of error:

(1) **The court erred at the hearing of the motion to recuse the trial judge by failing to apply the objective test articulated by the United States Supreme Court to be applied in such cases.**

(2) **The trial court erred when it ruled in favor of defendant Bobby Herring and granted his special motion to dismiss all issues pending against him even though he failed to provide any evidence to make a *prima facie* case pursuant to La. Code of Civ. Proc. Art. 971 and there were other claims beyond those covered by the special motion to dismiss.**

(3) **Attorney for defendants Danny Lawler, David Lawler, and Ken Lawler should be sanctioned for filing a frivolous motion against plaintiffs' attorney causing unnecessary court costs for transcription and attorney's fees.**

(4) **The trial court committed reversible error by finding that the defendants had satisfied their burden of making out a *prima facie* case that their speech was protected by the First Amendment and concerned a matter of public interest, and then finding the plaintiffs had failed to make out a *prima facie* case that there was a probability they would prevail at trial.**

The second and fourth assignments of error are so closely aligned that they will be addressed contemporaneously below.

### A. First Assignment of Error: Motion to Recuse

In their first assignment of error, the plaintiffs argue that the trial court erred at the hearing on the motion to recuse the trial judge by failing to apply

6

the objective test articulated by the United States Supreme Court to be applied in such cases. The applicable standard of review of recusal is abuse of discretion. *Menard v. Menard*, 19-580 (La. App. 3 Cir. 3/11/20), 297 So. 3d 82; *In re Commitment of M.M.*, 53,577 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1095.

In order to recuse a judge from a case, the moving party is required to prove that "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Daurbigney v. Liberty Pers. Ins. Co.*, 18-929 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69, *quoting Rippo v. Baker*, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017). Plaintiffs argue that Judge Tutt did not specifically use the term "actual bias" in the judgment rendered on the motion to recuse and did not discuss the objective standard in his reasoning.

A review of the record indicates that the recusal hearing and subsequent judgment rendered on the issue were thorough and addressed the lack of evidence of any bias on the part of the trial court judge. We find there was no abuse of discretion in denying the motion to recuse. This assignment of error is without merit.

**B. Second and Fourth Assignments of Error: Article 971 SLAPP**

As the second and fourth assignments of error are substantially identical, focusing on application of Article 971, we will address them together. Plaintiffs allege that the trial court erred in finding that the defendants satisfied their *prima facie* burden of demonstrating the complained of speech was relative to a public issue, as required by Article

971, and further erred in finding that plaintiffs had not satisfied their burden of showing that they had a probability of success on their claims at trial.

Because we review this matter *de novo*, we must examine the record and determine whether the defendants' motions under La. C.C.P. art. 971 should have been granted. This review must first resolve whether the statements made by the defendants fall under the protection of Article 971, *i.e.* whether Lawler's written or oral statements were made in a place open to the public or a public forum in connection with an issue of public interest.[1]

Speech on matters of public concern is at the heart of the First Amendment's protection, and matters of public concern relate to any matter of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Whether speech addresses matters of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record. *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418 (La. 7/10/06), 935 So. 2d 669; *Wainwright*, *supra*; *Quinlan*, *supra*.

All public statements complained of by the plaintiffs involve Hatfield's run for public office for sheriff in 2015 and 2019 or his competence as constable and whether he should be reelected to that office. In their petition, Plaintiffs have provided copies of Facebook posts from a page entitled "Recall Caddo Ward 8 Constable Eric Hatfield," photos of the lyingeric.com website advertised on "The Inquisitor" newspaper boxes, and photos of various people holding signs advertising lyingeric.com standing on

---

[1] The plaintiffs admit that Herring and Ken and David Lawler have not had any communications that would be deemed defamatory, and instead, plaintiffs allege they were part of a civil conspiracy to "rid Caddo Parish of the plaintiffs."

the side of public streets. Plaintiffs also included a Facebook post from Lawler's personal page, offering free food and drinks to local restaurants that that do not support Hatfield and Senn. One post from August 3, 2018, calls Hatfield a bully and Senn an "attention whore." Another Facebook post from Lawler's personal page offers to pay people to hold signs and pull trailers advertising the lyingeric.com website.

Plaintiffs attached various exhibits to their affidavit in opposition to the special motions to strike. These exhibits include an article written by Lawler for "The Inquisitor" which states that Hatfield and Senn "are the targets of a Medicaid fraud complaint filed with the Louisiana Attorney General's Office," and a copy of the front page of "The Inquisitor" with the headline "Seriously?? She May Be A 3" in reference to Senn. One exhibit includes a quote attributed to Lawler, which states, in relation to Senn, "What a nasty woman! I mean, seriously? She may be a three. And I emphasize 'may be a three.'"

In response, Lawler provided an affidavit that states his website, lyingeric.com, consists of public documents, commentary on Hatfield's fitness for public office, and Lawler's opinion that Hatfield is a liar. Lawler attests that "[m]y political opinion, which I have expressed through my website, lyingeric.com, and other means, is solely intended to inform the public of Mr. Hatfield's fitness for public office."

The competence of public officials and their fitness for office are matters of public interest to the community. During the time period complained of by the plaintiffs, Hatfield was a duly elected constable and/or running a campaign to be sheriff of Caddo Parish, or had expressed an

intention to seek reelection to his current position. We find plaintiffs' argument that an elected constable is not a public official to be unpersuasive. A public official is someone who holds a governmental position that invites public scrutiny and discussion and has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it. *Davis v. Borskey*, 94-2399 (La. 9/5/95), 660 So. 2d 17, 21 at n. 6. We further find that Senn interjected herself in the public dispute between Lawler and Hatfield, by participating in social media platforms in an effort to assert reciprocal character issue claims against Lawler and his wife and family. Some of those allegations resulted in litigation between the parties, awarding damages against Hatfield and Senn and in favor of Lawler's wife, which was recently affirmed by this court.

The primary thrust of plaintiffs' argument to this court in this matter is that the defendants did not satisfy their *prima facie* burden of proof that the complained of statements are protected under the First Amendment because they did not attach affidavits or deposition testimony to the special motions to strike. We find this argument to be without merit. Plaintiffs have failed to cite any authority that states an affidavit or deposition testimony is a mandatory requirement to meet the mover's *prima facie* burden under Article 971. In fact, Louisiana jurisprudence has found that "reference to the plaintiff's petition alone demonstrates that the causes of action arise from acts in furtherance of the defendants' right of free speech and in connection with a public issue." *Darden v. Smith*, 03-1144 (La. App. 3 Cir. 6/30/04, 879 So. 2d 390, *writ denied*, 04-1955 (La. 11/15/04), 887 So. 2d 480. Finally, plaintiff's argument disregards the fact that the trial court allowed

Lawler to attach an affidavit to his special motion to strike, attesting that his statements were made in the furtherance of his First Amendment rights.

To facilitate the determination of any likelihood of success on the claims made, Article 971 requires the court to consider the pleadings and any supporting and opposing affidavits. There is no corresponding requirement that any affidavits must be filed. Rather, should the parties elect to file such affidavits, the court is affirmatively charged to consider those filings. The pleadings themselves, and the allegations contained therein, may alone be sufficient for the court to make its determination of whether it involves a public issue and if there exists a probability of success on the claim.

Considering the above, the statements complained of by the plaintiffs meet the statutory definition of acts in furtherance of the right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue and, thus, fall under the purview of La. C.C.P. art. 971. The defendants have made a *prima facie* showing that the complained of statements were constitutionally protected and were made in connection with a public issue.

The burden now shifts to the plaintiffs to demonstrate a probability of success on their claims. If more than one claim is alleged in the petition, the court should examine the probability of success of each claim individually, and if the plaintiff can demonstrate a probability of success on any claim, then the motion must fail. *Quinlan*, *supra*.

As permitted by Louisiana's fact pleading provisions, plaintiffs have outlined the historical acrimony which existed between the parties in what is

11

best described as an "airing of grievances." Many of the complained of activities and statements have long ago prescribed under Louisiana's tort law, but such allegations aid in providing historical perspective. The trial court properly discerned which allegations could possibly be construed to assert viable claims against the defendants. We must do the same.

**<u>Defamation</u>**

Defamation is a tort that involves the invasion of a person's interest in his or her reputation and good name. *Sassone v. Elder*, 626 So. 2d 345 (La. 1993); *Wainwright*, *supra*. A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person or otherwise exposes the person to contempt or ridicule. *Kennedy*, *supra*; *Wainwright*, *supra*.

There are four elements necessary to establish a claim for defamation: 1) a false or defamatory statement concerning another, 2) an unprivileged publication to a third party, 3) fault (negligence or greater), and 4) resulting injury. La. C.C. art. 2315; *Kennedy*, *supra*; *Wainwright*, *supra*. If even one of the required elements of the tort is lacking, the cause of action fails. *Wainwright*, *supra*; *Quinlan*, *supra*. The fault requirement is malice, actual or implied. *Wainwright*, *supra*. Actual malice is generally established by showing that the defendant either knew that the statement was false or acted with reckless disregard for the truth. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So. 2d 129.

In determining the standard of liability in defamation claims, the Louisiana Supreme Court makes a distinction between plaintiffs who are

public officials or public figures and private individuals.  *Kennedy*, *supra*. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), the United States Supreme Court found that the First Amendment prohibits a public official from recovering damages arising from a defamatory falsehood published in relation to his or her official conduct, unless the public official proves that statement was made with "actual malice."  This protection was granted to speech discussing public officials because defamation would have a chilling effect on constitutionally valuable speech.  *Kennedy*, *supra*.  The *New York Times* decision imposed the requirement for a high degree of fault in defamation actions brought by public officials and shifted the heightened burden of proof of fault to the public official.  *Kennedy*, *supra*.

The case of *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967), extended the standard of liability outlined in the *New York Times* to include public figures, *i.e.* non-public officials who are intimately involved in the resolution of important public questions or who, by reason of their fame, shape events in areas of concern to society at large. A person may become a public figure because they have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).  An individual who voluntarily injects himself or is drawn into a particular controversy becomes a public figure for this limited range of issues because they have invited attention and comment and assume special prominence in the resolution of public questions.  *Gertz*, *supra*; *Wainwright*, *supra*.

13

As noted above, at all pertinent times herein, Hatfield was a duly elected constable and public official. He was also a candidate for Caddo Parish Sheriff in 2015 and 2019 and had made known his intention to seek re-election to his position as constable. A candidate for public office is held to the same standard as a public official for defamation purposes. *Badeaux v. Sw. Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211. As such, Hatfield is subject to the higher burden placed on public officials and must prove that the complained of statements were made with actual malice.

Similarly, Senn is a limited purpose public figure. Senn has gained a certain level of notoriety related to the animosity between Hatfield and Lawler. She has a criminal conviction related to an altercation with Lawler and has been a named defendant in a defamation action instituted by Lawler's wife. *See Yanong v. Coleman*, 53,933 (La. App. 2 Cir. 5/17/21), 2021 WL 1961018. In the *Yanong* matter, this court noted that Senn had participated in a number of podcasts discussing Lawler and made posts on her Facebook account about Lawler and his wife. Senn has voluntarily injected herself into this particular controversy and has become a public figure for this limited range of issues. She has invited attention and comment on these issues and has assumed special prominence in the resolution of public questions about Hatfield and his capacity as a public official.

In the instant case, Hatfield, as a public official, and Senn, as a public figure, must establish actual malice in order for their defamation action to succeed. The actual malice standard is not met merely through showing ill will or "malice" in the ordinary sense of the word. Actual malice may not

14

be inferred from evidence of personal spite, an intention to injure, or a bad motive. *Tarpley v. Colfax Chronicle*, 94-2919 (La. 2/17/95), 650 So. 2d 738. Actual malice must be proven with convincing clarity. *Kennedy*, *supra*.

Hatfield and Senn have failed to provide any evidence of actual malice. While the animosity between the parties is clear, there is no evidence of actual malice but, rather, evidence of personal spite and a political motive. Louisiana politics is no doubt a contact sport. The Louisiana and United States constitutions, and subsequent interpretive jurisprudence, have cut a wide swath of protection around speech, which, while it could understandably cause consternation and anger, offers refuge for opinionated comment when it comes to those seeking and holding public office and the version of themselves they portray to voters and constituents. Unfortunately, those exchanges have become increasingly harsh and public, but such public issue speech can not be stymied.

The language cited by the plaintiffs is made up of opinions and hyperbole. An expression of opinion occurs when the maker of the comment states the facts on which his opinion of the plaintiff is based and then expresses a comment as to the plaintiff's conduct, qualifications, or character. *Wainwright*, *supra*. An expression of opinion on a matter of public concern that does not imply a false fact cannot be the basis of a defamation action. Where a statement of opinion on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were

15

made with knowledge of their false implications or with reckless disregard of the truth. *Id.*

Here, Plaintiffs have only provided a small number of instances where Hatfield or Senn are specifically referenced by Lawler, *i.e.* calling Hatfield a liar and a bully on Facebook and calling Senn an attention whore. These are clearly expressions of opinion and not sufficient to show a probability of success on defamation action.

The statements made in plaintiffs' brief and the record are simply conclusory and fail to state specific instances of defamation of a public official or public figure. Considering the above, Hatfield and Senn have not demonstrated a probability of success on their defamation claims, and we find that their defamation claims were properly dismissed by the trial court.

**Intentional Infliction of Emotional Distress**

Hatfield and Senn have also made claims for intentional infliction of emotional distress. In order to be successful on these claims, they are required to demonstrate: 1) that the conduct of the defendant was extreme and outrageous, 2) that the emotional distress suffered by the plaintiff was severe, and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *LaBove v. Raftery*, 00-1394 (La. 11/28/01), 802 So. 2d 566, 577; *Darden*, *supra*. Public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications unless they are able to show that the publication contains a false statement of fact which was made with "actual malice," *i.e.* with knowledge that the statement was false or with reckless

16

disregard as to whether or not it was true. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988).

Our review of the record indicates that plaintiffs have failed to demonstrate a probability of success as to these claims. There is no evidence that defendants' statements were made with actual malice. As such, we find that the intentional infliction of emotional distress claims were appropriately dismissed by the trial court.

**Invasion of Privacy**

Plaintiffs have made a claim for invasion of privacy. Violation of the right of privacy is actionable only when a defendant's conduct is unreasonable and seriously interferes with another's privacy interest. *Zellinger v. Amalgamated Clothing*, 28,127 (La. App. 2 Cir. 4/3/96), 683 So. 2d 726; *Smith v. Arkansas Louisiana Gas Co.*, 26,180 (La. App. 2 Cir. 10/26/94), 645 So. 2d 785, *writ denied*, 95-0035 (La. 4/10/95), 650 So. 2d 1179. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of a defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. *Smith*, *supra*.

Plaintiffs have not described any specific, nonprescribed instances of invasion of privacy. Plaintiffs have not provided evidence that the defendants' statements unreasonably or seriously interfered with the plaintiffs' privacy interest. As such, these claims were properly dismissed by the trial court.

**<u>Claims on behalf of the Hatfield Children</u>**

Finally, the record contains no specific allegations regarding the Hatfield children, other than an allegation that the children's medical records had been obtained by an unknown person and distributed in 2017. The trial court found these claims prescribed, and plaintiffs have not argued that they were not prescribed. We find no evidence in the record to support claims of defamation, intentional infliction of emotional distress, or invasion of privacy on behalf of the minor children, and thus, affirm the trial court's dismissal of any such claims.

**C. Third Assignment of Error: Sanctions**

Plaintiffs request that this court issue sanctions against the Lawlers' counsel for "filing a frivolous motion against plaintiffs' attorney causing unnecessary court costs for transcription and attorney's fees." Plaintiffs' counsel seeks sanctions against defense counsel for seeking sanctions against her at the trial court level. The remedy for a claim for sanctions is a hearing on the issue and determination by the trial court as to whether the alleged actions rise to a level to be sanctionable. Opposing counsel is not the arbiter of that matter. While counsel may form a good faith belief that sanctions should be levied by the court, it is the court, considering the totality of the circumstances, which is empowered to reach a conclusion of the issue. Such a hearing or consideration by the trial court would have afforded the appropriate relief to the filings below. Appellate courts, however, will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. *Enriquez v. Safeway Ins. Co. of La.*, 52,425 (La. App. 2 Cir. 1/16/19), 264

So. 3d 648. Plaintiffs did not seek sanctions against defense counsel at the trial court level. As such, this court cannot consider this issue, and this assignment of error is without merit.

## ATTORNEY FEES AND COSTS

In any action subject to La. C.C.P. art. 971(A), a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs. La. C.C.P. art. 971(B); *Quinlan*, *supra*. As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract. *State, Dept. of Transp. & Dev. v. Wagner*, 10-0050 (La. 5/28/10), 38 So. 3d 240; *Quinlan*, *supra*.

This court has held that the general rule regarding additional attorney fees for work done on appeal is that an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal. In *Quinlan*, *supra*, this court found that where a plaintiff appealed the trial court's grant of the defendant's special motion to strike pursuant to La. C.C.P. art. 971, the defendant was entitled to an increase of attorney fees for the work done on appeal when defendant prevailed.

Here, the plaintiffs were unsuccessful in obtaining relief on appeal, and the appeal necessitated additional work by counsel for the defendants, all of which has its genesis in Article. 971. As such, pursuant to the mandatory attorney fee language in La. C.C.P. art. 971(B), we find defendants are entitled to an increase in attorney fees for this appeal. This matter shall be remanded to the trial court for the determination of a

19

reasonable attorney fee award for defendants for the necessary work on appeal by their respective counsel.

## CONCLUSION

The trial court's judgment dismissing the plaintiffs' claims with prejudice is affirmed. The trial court's denial of the motion to recuse is affirmed. Plaintiffs' request for sanctions is denied. The matter is remanded to the trial court for further proceedings in accordance with this opinion relative to fixing additional attorney fee awards in accordance with La. C.C.P. art. 971(B). Costs of this appeal are assessed to appellants, George Eric Hatfield and Amy Senn.

**AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.**